## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**CORY SLACK,**

      **Plaintiff,**

**vs.**                         **CASE NO. 3:22-CV-4221-LC-MAF**

**KILOLO KIJAKAZI,**
**Acting Comm'r of**
**Social Security Administration,**

      **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Cory Slack's Title II application for Supplemental Security Income (SSI). After careful consideration of the record, for the reasons stated below, the Commissioner's decision should be **REVERSED AND REMANDED**.

## I.   Procedural History

On or about, March 6, 2017, Slack, filed an application for disability benefits alleging his disability began on March 6, 2016, due to osteoarthritis

and affective mood disorder.[1] Tr. 84-85, 245-251.[2] Slack complained of back and knee problems, constant pain and discomfort, shoulder pain, PTSD, and depression. Tr. 74-75, 77, 319-24, 941.

The agency initially denied Slack's claim on March 23, 2018, and again upon reconsideration on May 30, 2018. Tr. 101-11. Slack requested an administrative hearing. Tr. 35, 114, 117. On July 19, 2021, the ALJ presided over a telephonic hearing; Slack was present and represented by counsel. Tr. 933-67. Slack and Stephen Davis, an impartial vocational expert (VE), testified at the hearing. Tr. 937-59 (Slack's testimony); Tr. 959-66 (VE testimony); Tr. 346-48 (VE Resume). At the hearing, the ALJ admitted medical records and other exhibits relating to Slack's claims, specifically, exhibits 1A through 4A, 1B through 21B, 1D through 21D, 1E through 18E and 1F through 21F. Tr. 937.

On July 27, 2021, the ALJ issued a decision denying Slack's application for benefits. Tr. 8-27. The ALJ purportedly considered "all the evidence," including Slack's medical records, and found he was not disabled.

---

[1] The ALJ's decision and the Commissioner's memorandum confirms Plaintiff filed his application on March 6, 2017. Tr. 11, 245-251; ECF No. 17, p. 1.

[2] Citations to the transcript/administrative record, ECF No. 7, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

Tr. 11, 21. Slack requested a Review of Hearing Decision on or about August 17, 2021. Tr. 242-43. On February 16, 2022, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 1, 6. On March 18, 2022, Slack filed his complaint in this Court. ECF No. 1. The Commissioner filed an answer on May 19, 2022. ECF No. 6. The parties filed memoranda of law, which were considered. ECF Nos. 17, 18.

## II.    Slack's Claims

According to Slack, the Commissioner's decision to deny disability benefits should be remanded for several reasons. ECF No. 18. First, the Appeals Council erred by failing to review new, chronologically relevant, and material medical records, specifically, Dr. Messe's opinion of Slack's limitations dated August 11, 2021. Id., p. 2. Second, the ALJ, in forming his conclusions, read the MRI himself and ignored the direct statements of medical experts regarding those reports without offering any analysis of the contrary statements. Id. Third, the ALJ failed to articulate any specific reasons for rejecting Dr. Messe's opinion of Slack's limitation. Id.

After the ALJ issued the decision, Slack submitted Dr. Messe's record dated August 11, 2021, to the Appeals Council for consideration. Id., p. 39. The Appeals Council did not consider the record because the "additional

evidence [did] not relate to the period at issue . . . whether [Slack was] disabled beginning on or before July 27, 2021." Id., p. 40. Slack claims this is reversable error because the evidence was new, material, and chronologically relevant. Id., pp. 40-41. Slack maintains that the record was the doctor's statement regarding an MRI study conducted on May 6, 2021, which predated the hearing before the ALJ. Id., p. 42. The Appeals Council committed reversible error by refusing to consider this record.

Although, in his application for benefits, Slack alleged his disability was due to both physical and mental health conditions, he only appeals the ALJ's evaluation of the evidence relating to his physical condition. Id. Slack's mental health conditions are not at issue.

Slack claims that the Commissioner's decision should also be reversed because the ALJ abused his discretion by substituting his own medical evaluations for those of a treating physician and ignoring the treating physician's opinions. Id., pp. 42-49. The ALJ also failed to articulate any specific reason for rejecting Dr. Messe's opinion of Slack's limitations. Id., p. 49-51. Slack cites to Raulerson v. Acting Comm'r of the SSA, 2022 WL 855765, 10 (M.D. Fla., Jacksonville Div., Mar. 23, 2022) for the premise that the district court cannot determine whether an ALJ's decision is rational or supported by substantial evidence if the ALJ fails to clearly articulate a

reason for rejecting a treating physician's opinion. Id., p. 50. Slack claims the ALJ's conclusory statement that the medical opinions were inconsistent without any explanation warrants a remand. Id., p. 51. Slack relies on McKay v. Saul, 2021 WL 1169395 (S.D. Ga., Savannah Div., Feb. 3, 2021).

## III.  Commissioner's Claims

The Commissioner maintains that Dr. Messe's treatment record dated August 11, 2021, when considered with the record as a whole, did not render the ALJ's decision erroneous. ECF No. 17, pp. 6-7. The record did not relate to the period at issue and was not chronologically relevant because it was dated after the ALJ's decision. Id., p. 8. According to the Commissioner, the treatment note shows that Slack reported to Dr. Messe when he was denied disability benefits and "wanted to appeal due to his allegedly worsening clinical situation . . . Plaintiff reported . . . his chronic pain conditions . . . had all worsened since May 2021; and he reported new and exacerbated symptoms." Id.

The Commissioner emphasizes that during a July 2021 visit, just prior to the end of the relevant period, Slack reported taking ibuprofen and "there was no mention" of him "using a cane or walking with an abnormal gait" as the August 2021 record states. Id., pp. 8-9. Any deterioration or worsening of Slack's condition after the relevant period would be irrelevant to whether

he was disabled before the ALJ's decision. Id., p. 9. The Commissioner cites to Mason v. Comm'r of SSA, 430 F. App'x 830, 833 (11th Cir. 2011) and Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) in support. Id., p. 9. Dr. Messe's opinions about the May 2021 MRI "merely rehash[] objective imaging results that were already part of the record before the ALJ and that the ALJ expressly considered." Id.

The Commissioner also argues the record is not new evidence because it was consistent with the ALJ's finding that Slack's spinal disorders collectively were a "severe impairment." Id., pp. 10, 13. Dr. Meese's report would not have changed the ALJ's decision. Id. Notes in the "history of present illness" (HPI) section were a repetition of Slack's subjective complaints about his limitations rather than a medical opinion. Id. Any statements that Slack was unable to maintain gainful employment made by Dr. Messe would not be entitled to deference or a specific weight because it is not a medical opinion but rather an administrative finding reserved to the Commissioner. Id., pp. 11-12. The Appeals Council did not improperly deny Slack's request for review. Id., p. 14.

The Commissioner also contends that the ALJ properly considered the MRI imaging reports in the record. Id. The ALJ properly and correctly noted the radiologist's findings in the MRI report. Id. Contrary to Slack's accusation,

the ALJ did not "ignore[e] evidence" that "supported his allegations of disabling limitations related to his spine disorder." Id., p. 15. The ALJ is not required to reference every piece of evidence. Id. There is "no evidence that would have compelled the ALJ to make a more restrictive RFC finding." Id.

The Commission argues that the ALJ properly articulated his reasons for giving Dr. Messe's little weight. Id., p. 16. Dr. Messe's opinions were conclusory, addressed an issue reserved to the Commissioner, were inconsistent with clinical examination findings and the treatment history; and were based primarily on subjective complaints. Id., pp. 16-17. The ALJ did not commit reversible error in denying Slack's disability benefits. Id., p. 18.

## IV.    Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239

(citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

---

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating she cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

---

do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

Slack bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20 C.F.R. § 404.1527.

Prior to 2017, an ALJ was required to give the treating physician's opinion "substantial or considerable weight unless 'good cause' was shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 128 F.3d 1436, 1440 (11th Cir. 1997). In 2017, the Commissioner issued a new regulation, 20 C.F.R. 1520c, which abrogated the "treating physician rule." Harner v. SSA, Comm'r, 38 F.4th 892, 896 (11th Cir. 2022). But this only applies to SSI and disability insurance applications filed *after* March 27, 2017. That is not the case here. Because Slack filed his application for benefits *before* March 27, 2017, the treating physician rule applies.

If the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. SSA Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

## V.    Legal Analysis

### A. Findings of the Administrative Law Judge

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found Slack had not engaged in substantial gainful activity since March 6, 2017, the application date. Tr. 13. The ALJ found Slack had "the following severe impairments: neck, back, left shoulder and knee disorders; obesity; posttraumatic stress disorder ("PTSD"); major depressive disorder; and anxiety." Id. Because Slack solely contests the findings relating to his physical condition, the findings and medical records relating to Slack's mental health impairments are not included in this Report.

The ALJ found Slack had other impairments that were not severe and did not result in significant work-related limitations of function for a continuous period of at least twelve months, namely, diabetes and hyperlipidemia. Tr. 13. Slack does not appear to contest this determination.

The ALJ made other findings. Slack "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 14. Specifically, the ALJ stated:

> [Slack's] neck, back, left shoulder and knee disorders do not meet the requirements of a musculoskeletal disorder in listings 1.15, 1.16, or 1.18. There is no evidence of nerve root compromise in the cervical or lumbar spine, compromise of the cauda equine, or impairment-related physical limitation of musculoskeletal functioning as defined in the listings.

Id. The ALJ also noted that, although Slack alleged he needed a cane to ambulate, the record does not support his allegation. Id. Slack objects to this finding.

Relative to Slack's physical condition, the ALJ determined that he "has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a)" except he "can occasionally climb ramps and stairs . . . can never climb ladders, ropes, and scaffolds . . . can occasionally balance, stoop, kneel, crouch, and crawl . . . can occasionally be exposed to vibration, unprotected heights and moving mechanical parts . . . [and] can occasionally reach overhead with the left upper extremity." Tr. 15, 18. Although the ALJ found that Slack's medically determinable impairments could reasonably be expected to cause some the alleged symptoms," his "statements concerning

the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 16.

The ALJ gave "little weight" to Dr. Messe's opinion that Slack could not maintain gainful employment and was "unable to stand for 15 minutes and . . . sit in one place for more than 15 minutes" finding the opinion was "conclusory, it addresses an issue reserved to the Commissioner, and it is not consistent with the . . . examination findings, imaging or treatment history." Tr. 18. According to the ALJ, "Dr. Messe did not provide a reasonable explanation for his opinion, which appears to be based primarily on . . . subjective complaints." Id.

The ALJ gave "some weight" to medical opinions of Dr. Krishnamurthy and other agency examiners because those opinions were somewhat consistent with the medical evidence and examination findings. Id. It is significant that the opinions are from 2018. Tr. 98. The examiners did not review any of Slack's medical records for a *three-year period* culminating in the ALJ's decision.

Nonetheless, the ALJ determined that "based on the record as a whole," Slack was limited to a range of sedentary work. Tr. 19. The ALJ limited Slack "to unskilled work" to account for his mental health issues. Id.

According to the ALJ, this RFC was supported by Slack's ability to care for his personal needs, prepare meals, perform household chores, drive, shop, manage his finances, and use a smartphone. Id. The ALJ found Slack is unable to perform any past relevant work as a laborer because he is unable to perform as the work was actually- or generally performed. Id.

Slack, 42 years old at the time, was defined as a younger individual, has "limited education"; and "transferability of job skills is not an issue in this case because" his "past relevant work is unskilled." Tr. 20. Medical Vocational Rule 201.18 supported a finding of "not disabled." Id. Considering Slack's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform." Id. In short, because Slack can perform unskilled, sedentary work with some exceptions, he was not disabled. The VE testified that given these factors, Slack can perform the following occupations: laminator, table worker, and document preparer. Id.

Finally, the ALJ determined that Slack "has not been under a disability as defined in the Social Security Act, since March 6, 2017." Tr. 21.

B. Slack's Medical Treatment History

Before the Court can resolve Slack's claims, it is necessary to outline the medical treatment history as it relates to his physical limitations.

*1. Treatment Prior to 2017*

Slack has a long history of back pain. The medical records show that as early as 2004, Slack received treatment for "low back pain with related functional loss." Tr. 357-79. In 2007, Slack was treated by Dr. Kasabian. Slack's low back was a "little tender particularly L4-5 with flexion," but, at the time, Slack did not require an "assistive device" to walk. Tr. 381.

Several years later, on May 2, 2013, Slack had an MRI of his lumbar spine. Tr. 622. The MRI showed a bulge at L3-4, with "mild encroachment in the AP diameter of the thecal sac . . . the intrathecal roots otherwise are unaffected." Id. Short pedicles at L3-L4 and L4-L5 contributed to encroachment. Id. The extrathecal L5 roots [were] mildly impinged related to the limited bony and limited disc protrusion complex beyond with an annular tear . . . mild thecal sac encroachment AP broad mediolateral without evidence of intrathecal root affect" Tr. 622, 625. "The canal, the cord, conus, and roots are intrinsically unremarkable." Tr. 622. An MRI of Slack's right shoulder taken the same day showed a "[s]ubacute strain injury of the AC articulation with edema and swelling; slightly distracted only." Tr. 624.

The x-ray of Slack's lumbar spine taken on January 13, 2016, was apparently normal: "[t]he vertebral body heights and disc spaces are well maintained. No acute fractures or regions of bone destruction . . . [t]he facet

joint complexes are normal." Tr. 621. Two weeks later, however, Slack presented to the emergency room at Santa Rosa Medical Center (Santa Rosa ER), on January 26, 2016, and reported a progression of low back pain. Tr. 399. Slack "displayed a normal gait pattern without an assistive device." Tr. 400. Physical therapy was recommended along with other conservative treatments; his "rehab potential" was noted to be "good." Id.

On March 2, 2016, Slack began a pain management regimen at Dynamic Pain and Wellness (Dynamic). Tr. 618-20. Slack was in no acute distress, had 5/5 motor strength in all extremities except for 4/5 strength of the left lower extremity. Tr. 620. Slack had decreased range of motion of the lumbar spine and tenderness to palpation over the L3-L5 and L5-S1. Id. Dynamic prescribed anti-inflammatory medications. Id. Every few weeks, Slack continued with Dynamic for pain management; and there were "no significant changes" upon evaluation. Tr. 609, 613. Slack was not in acute distress, denied unsteady gait, and was prescribed Norco and Duexis. Tr. 593, 601-02, 605, 610, 613-14. Regularly, Slack had decreased range of motion in the lumbar spine and denied neck pain; his gait was non-antalgic. Tr. 601, 605, 609.

On May 11, 2016, Slack reported bilateral knee pain and claimed he had difficulty extending his knees or walking long distances. Tr. 604.

Examination showed a decrease in range of motion and tenderness to palpation of the bilateral knees. Tr. 605. Steroid injections were recommended. Tr. 606. The second MRI of Slack's L-spine on June 22, 2016 (now three years after the 2013 MRI) showed: "Mild posterior disc bulge at the L4-L5 disc space level. Mild degenerative changes are seen at the facet joint complexes but without significant encroachment upon the spinal canal or intervertebral neural foramina." Tr. 398, 596, 855.

On July 6, 2016, Slack returned to Dynamic and complained of low back pain, knee pain and swelling, and neck pain all exacerbated by being on his knees for long periods of time for work or driving. Tr. 591. Slack was not in acute distress; his gait was non-antalgic; there was decreased range of motion of the bilateral knees, lumbar- and cervical spine; tenderness to palpation and on extension and lateral rotation of the lumbar spine; and pain on extension and rotation of the cervical spine. Tr. 592-93. A disc bulge and spurring on the lumbar spine were confirmed. Tr. 593. Still, because Slack tested positive for hydrocodone, hydromorphone, and norhydrocodone, "drugs [were] NOT prescribed." Tr. 588. Physical therapy was recommended. Tr. 593.

On July 14, 2016, Slack tested positive for marijuana. Tr. 586. Dynamic repeatedly advised Slack that if he continued to do illicit drugs, they could

not treat him per their policy and contract. Tr. 554, 559, 574, 581, 583, 585, 593, 602, 606, 610, 614. Slack's symptoms continued to remain the same -- he was in no acute distress; his gait remained non-antalgic; and the Narco prescription was renewed. Tr. 555, 557-60, 567-69, 596, 572-74, 580-81. On September 9, 2016, and November 14, 2016, Slack tested positive for various illicit drugs and marijuana. Tr. 561-63, 575-77.

### 2. *Treatment During 2017.*

On January 23, 2017, Slack reported to Dynamic that he was doing well with the medication regimen, had significant relief with a TENS unit used during physical therapy, and wanted a prescription for a TENS unit. Tr. 554. There were no significant changes in Slack's condition or symptoms. Tr. 552-54. On February 17, 2017, Dynamic renewed Slack's prescriptions for Norco, Robaxin, and Volaren. Tr. 550. Insurance coverage interfered with Slack's continued treatment from this point until May 1, 2017. Tr. 546.

On May 1, Slack's condition had not significantly changed; he was not in acute distress, had decreased range of motion in the lumbar- and cervical spine and both knees, which also had pain and tenderness upon extension, rotation, and flexion. Tr. 547-48. Dynamic renewed the Norco and Robaxin prescriptions and reminded Slack about their narcotics policy. Tr. 548. Within a few days, Slack tested positive for marijuana. Tr. 543. Slack's condition

and course of treatment continued, as did his positive drug tests for opiates and marijuana. Tr. 532-42. On July 24, 2017, Slack presented to Dynamic for pain management, though not in acute distress. Tr. 526-27. As before, Slack's gait was non-antalgic; there was decreased range of motion of the lumbar spine and left knee, tenderness to palpation and on extension and lateral rotation in the lumbar spine, and pain on extension and rotation of the cervical spine. Tr. 528. Again, Dynamic prescribed Norco and Robaxin. Tr. 529.

On August 2, 2017, Slack tested positive for marijuana and opiates. Tr. 524. Two days later, Slack went to Lakeview Center for depression and claimed he does not take any medication and cares for his autistic son. Tr. 416, 420. He also reported seeing a pain management physician. Id. About one week later, on August 12, 2017, Slack went to Santa Rosa ER for congestion; he was in no acute distress. Tr. 391. Relevant to this inquiry, the record notes his prior history of "back problems"; his neck, extremities, and back were "negative" for "injury," "pain," or "swelling." Id.

On August 21, 2017, Slack returned to Dynamic. Tr. 521. Slack had no pain in the cervical spine, which had full rotation; and the range of motion was limited in the left shoulder. Id. His gait was non-antalgic; there was decreased range of motion of the lumbar spine and the left knee. Id. There

was tenderness to palpation and on extension and lateral rotation in the lumbar spine and pain on extension and rotation of the cervical spine. Id.

On September 12, 2017, Slack received an injection to relieve the pain in his left shoulder. Tr. 541. On September 19, Slack went to Dynamic but not in acute distress; the cervical facet revealed no pain; the cervical spine was stable; and his gait was non-antalgic. Tr. 510-11. There was decreased range of motion of the lumbar- and cervical spine, and the left knee; there was tenderness to palpation at L3-L5 and L5-S1 facet regions; and pain on extension and rotation of the lumbar- and cervical spine. Tr. 512. Dynamic renewed the Norco and Robaxin prescriptions. Id. On September 22, Slack returned to Lakeview Center for mental health care and reported a history of chronic back pain, bulging discs, and pain management treatment including an injection in his shoulder. Tr. 414. He tested positive for marijuana on September 23. Tr. 508.

A few days later, on September 27, 2017, Slack presented to Dr. Purushottam for a health screening and complained of lower back pain and left shoulder pain. Tr. 457, 636, 800. Slack had no pain in his legs, no sexual difficulty, and no difficulty walking. Tr. 458, 636, 801. He had some minimal local tenderness in the spine. Tr. 459, 637, 802. Shoulder and back exercises were recommended. Id.

On October 17, 2017, Slack returned to Dynamic in similar condition. Tr. 503. He was not in acute distress; the cervical facet revealed no pain; the cervical spine was stable, and his gait was non-antalgic. Tr. 504. There was decreased range of motion of the lumbar- and cervical spine and the left knee and tenderness to palpation at L3-L5 and L5-S1 facet regions; and pain on extension and rotation of the lumbar- and cervical spine. Tr. 505. Dynamic renewed the Norco, Robaxin, and ibuprofen prescriptions. Tr. 506.

On November 1, Slack complained of left shoulder pain and denied an unsteady gait. Tr. 498-99. Conservative measures were unsuccessful at treating Slack's pain. Tr. 499-500. Two weeks later, Slack returned for lumbar pain "well nourished and overweight," and in no acute distress. Tr. 493-94. Palpitation of the cervical facet revealed no pain and was stable, but there was pain when flexed anteriorly. Id. There was limited range of motion of the left shoulder; and Slack's gait was non-antalgic with no abnormalities. Id. Slack had decreased range of motion of the lumbar- and cervical spine and left knee. Tr. 494-95. Dynamic renewed the Ibuprofen, Norco, and Robaxin prescriptions. Tr. 495.

On December 1, 2017, Slack returned to Dr. Purushottam to review lab work. Tr. 454, 634, 796. Slack denied muscle weakness, "[felt] relatively well, no interference with walking, no joint pain, stiffness except for the left

shoulder." Tr. 455, 635, 797. Slack was found to be "very muscular and looks like he is very healthy in his posture"; and his gait was normal. Id. There was "minimal local tenderness of the lumbo[s]cacral spine." Id. One week later, on December 7, an MRI of Slack's left shoulder showed "inferior chondrolabral separation with an associated subchondral cyst . . . minimal AC joint arthrosis . . . and no rotator cuff tear or tendinosis." Tr. 411, 491.

On December 12, 2017, during group therapy, Slack reported the week was "tough due to his physical pain." Tr. 439. The same day, Slack returned to Dynamic. Tr. 486. Slack claimed the medication helped but he still had significant pain; exercises and over-the-counter medications were not providing him relief. Id. Slack tested positive for marijuana again. Tr. 482. Slack's gait was non-antalgic, he had decreased range of motion of the lumbar- and cervical spine and the left knee. Tr. 487. Dynamic renewed the prescriptions. Tr. 488.

On December 28, 2017, Slack presented to Dr. Szymoniak complaining of left shoulder pain at a level of 7 out of 10. Tr. 408-09. Slack did not have neck-, back-, or arm pain or muscle aches or weakness. Tr. 409. The record notes:

> The patient is quite muscular there is no muscle atrophy. He has full range of motion left shoulder has pain with impingement maneuver. Has pain with overhead elevation . . . he has 5/5 biceps and triceps strength. He has good

external rotation strength with very little pain with this maneuver. There is no cervical spine tenderness.

Tr. 409. Slack was assessed with impingement syndrome of the left shoulder. Tr. 410. The MRI scan of the left shoulder showed two problems: a cyst inferior and a type 2 acromion. Id. If injections did not provide relief, then the labral tear would likely be causing pain and arthroscopic surgery could be considered. Id.

### 3. Treatment During 2018 and 2019

Slack returned to Dynamic, on January 9, 2018, for back-, neck-, shoulder-, and knee pain. Tr. 477-78. Slack reported his knees give out on him, at times; and he has trouble ambulating. Tr. 478. Slack reported his pain was an 8 out of 10; he discontinued physical therapy because it increased the pain. Id. Dynamic renewed the Norco and ibuprofen prescriptions and advised that injections could help the lower back. Tr. 480. Slack was a surgical candidate for the labral tear in the shoulder but was not amenable to surgery given his responsibilities with his autistic son. Id. Slack admitted prior to marijuana use but stated he discontinued it. Id. However, Slack again tested positive for marijuana and opiates. Tr. 472, 474. Dynamic reminded Slack about their narcotics policy. Id.

On January 18, 2018, Slack reported during group therapy that he is always in pain from his injuries. Tr. 441. On February 7, 2018, Dynamic

renewed the Norco and ibuprofen prescriptions. Tr. 471. Two weeks later, on February 20, Slack returned to Dr. Purushottam for a referral to pain management for lower back pain and neck pain. Tr. 451, 632, 792. Dr. Purushottam noted that Slack "is very muscular and looks like he is very healthy in his posture . . . his left shoulder is dropping 3 inches down the horizontal level his neck is protruded again . . ." Tr. 452, 633, 794. Slack's neck was tender on both sides of midline with rigidity of the post neck muscles; and range of motion was limited. Id. The lumbar spine was a normal shape . . . minimal local tenderness of the lubo[s]acral spine." Id. The doctor recommended "walk or other sustained cardiovascular exercise for 2.5 hours per week or more." Tr. 453, 633. Given the diabetes diagnosis, it was also recommended Slack should not have a sedentary lifestyle. Id.

Two days later, on February 22, Slack presented to Dynamic complaining of back-, neck-, shoulder- and knee pain. Tr. 466, 468. Slack reported taking only ibuprofen 800 mg. Tr. 468. There was tenderness and decreased range of motion of the lumbar- and cervical spine and the left knee. Tr. 469. Dynamic renewed the Norco prescription with a warning -- if Slack continued to use marijuana, Dynamic would no longer prescribe him any narcotics. Id. On March 20 and 21, Slack had injections to alleviate his back pain at L3-S1. Tr. 658, 666. Slack saw Dynamic two days later, on

March 23; and his condition and treatment remained substantially the same. Tr. 654-57. His prescriptions were renewed. Tr. 657.

Slack went to Dynamic on April 20, 2018. There were no substantial changes to his condition or treatment except for a wound on his right foot, which was present at a prior visit. Tr. 650, 655. Still, Slack's gait was non-antalgic; "motor examination reveal[ed] no abnormalities." Tr. 651. Dynamic renewed the Norco and ibuprofen prescriptions but limited it to a two-week supply given Slack's continued illicit drug use. Tr. 651-52.

Slack returned to Dr. Purushottam on April 30, 2018, for his lower back and neck pain. Tr. 630, 788. Slack reported "feeling relatively well" and wanted a referral to pain management. Id. On May 4, 2018, Slack returned to Dynamic and reported neck-, back-, and knee pain and a lack of mobility, but denied shoulder pain. Tr. 642-43. Slack was in no acute distress; his gait was non-antalgic; he had decreased motion of the lumbar- and cervical spine and left knee. Id. There was tenderness and pain in the lumbar- and cervical spine as before. Tr. 644. Slack continued to test positive for marijuana and opiates and was counseled. Tr. 644, 646-47.

On June 6, 2018, Slack presented to Lakeview Center for mental health treatment. Tr. 748-49. The record states that Slack "ambulates with steady gate." Tr. 749. The same is true when Slack presented to Lakeview

Center from July 30, 2018, through April 24, 2019, "Patient ambulates with steady gait." Tr. 751, 754, 757, 761. On June 15, 2018, Slack had an MRI of his cervical spine, which was "normal." Tr. 853.

On June 29, 2018, Slack went to Dynamic for a follow-up appointment. Tr. 871. There was no pain in the cervical spine when the neck was flexed, extended, or rotated. Tr. 872. There was pain with lumbar extension and left lateral flexion, limited range of motion and pain in the left shoulder, decreased range of motion and pain of the cervical spine, and decreased range of motion of the left knee. Tr. 873. Dynamic discontinued the narcotic prescriptions because Slack tested positive for marijuana on every drug screen. Tr. 873, 868.

On October 1, 2018, Slack went to Dr. Purushottam for neck pain and pain in the arch of his left foot. Tr. 784, 807. Notably, there was no obvious weakness in Slack's bilateral upper extremities. Tr. 786. Slack also had local tenderness of the lumbosacral spine with mild tenderness over the sciatic nerve. Id. He was diagnosed with plantar fasciitis and neck pain. Id. The doctor advised Slack to go back to pain management, avoid activity that aggravates neck pain, and to use a cervical collar if needed. Tr. 787.

Slack went to Dynamic on January 8, 2019, to reestablish care after a six-month break. Tr. 866. Slack reported he never used any illicit drugs.

Tr. 867. Slack reported neck-, back-, hip- and knee pain and lack of mobility, but was in no acute distress. Id. As before, the cervical spine was stable, normal curvature, full rotation with no pain. Id. There was pain with lumbar extension and limited range of motion with the left shoulder. Tr. 868. Slack's gait was non-antalgic; and "[m]otor examination reveal[ed] no abnormalities." Id. Slack was considered "high risk" for drug abuse; he was prescribed ibuprofen and Zanaflex; and physical therapy and a new MRI were recommended because Slack's symptoms were worsening. Tr. 868-69.

On May 6, 2019, Slack went to Santa Rosa ER for sinusitis. Tr. 724. Relevant to this inquiry, Slack had no impaired gait, was in no apparent distress, had no injury or pain in his back, and had full range of motion of his neck. Tr. 725-28. On September 26, 2019, Slack returned to Lakeview Center; and, again, his gait was steady. Tr. 767. On October 24, 2019, Slack went to Santa Rosa ER for a possible splinter in his finger; notably, the record indicates Slack's "[g]ait [was] steady" and "normal." Tr. 692, 696.

### 4. Treatment During 2020 and 2021

Slack went to Santa Rosa ER on January 1, 2020, complaining of an abscess in the left, upper lateral chest wall. Tr. 684. He was "negative" for back pain or injury. Tr. 685. He had full range of motion in his neck, "cervical spine, thoracic lumbar spine without any pain elicited"; and his "motor

strength [was] 5/5 in upper and lower extremities bilaterally." Id. The abscess was drained. Tr. 686. On January 9, 2020, Slack went to Dr. Purushottam complaining of pain. Tr. 780, 805, 876. Slack stated he had not been treated by Dynamic in a year because the injections did not help his low back and neck pain. Id. Slack reported he "has lately been feeling relative[e]ly well." Tr. 781, 805. He reported back pain but no difficulty in walking. Id. His neck was tender with pain on lateral movement. Tr. 782. There was a tender knot in Slack's left foot; so, he ambulated with slow, short steps but had "appropriate station and gait with no assisted devices." Tr. 782.

Soon, Slack began treatment with Dr. Messe on February 12, 2020. Tr. 834-40. For the first time, Slack now required the use of a cane. Tr. 838. Slack had a limping gait. Id. Six days later, on February 18, 2020, Slack returned to Lakeview Center for medication management but continued to ambulate with a "steady gait." Tr. 771-72. Slack continued to see Dr. Messe for chronic care management throughout 2020 and 2021.

On February 27, 2020, Dr. Messe noted Slack complaining of severe pain at a level 9; and, while opioids might have been considered, Slack used marijuana on a regular basis. Tr. 830, 833-34. On March 26, 2020, Slack saw Dr. Messe; his extremities moved without difficulty. Tr. 825-829. On April 23, 2020, Slack saw Dr. Messe and reported chronic low back pain but

could move his extremities without difficulty. Tr. 821-24. Slack's left foot was improving. Tr. 825.

On August 14, 2020, Slack had a tele-med, mental health appointment with Lakeview Center to renew his medications and admitted to continued use of illicit substances. Tr. 857-58. During a tele-med appointment on October 12, Slack reported difficulty sleeping due to back issues. Tr. 859-60, 886-87. On March 30, 2021, Slack reported that his situational stressors included "physical health issues, chronic back pain . . . and worsening symptoms." Tr. 891.

On June 23, 2020, Slack saw Dr. Messe. Tr. 915. The HPI section states that Slack's back pain was moderate to severe, worsened with activity, and was alleviated with rest. Tr. 918. The notes indicate there was a flare-up of the sciatica, shooting pains in the right leg, and weakness in the leg. Id. Slack reported "normal activity level and no fatigue." Tr. 919.

On August 25, 2020, Slack saw Dr. Messe. Tr. 910. The HPI section states Slack was "still with severe sciatic nerve pain and lumbar arthropathy, he needs an MRI of his spine, symptoms are getting worse with left leg weakness." Tr. 913. Slack reported "normal activity level and no fatigue." Tr. 914. Upon examination, there was "decreased ROM and a[n]talgic gait, LEFT LEG WEAK EXTENSION STRENGTH WHEN COMPARED TO

RIGHT, POSITIVE SLR ON LEFT." Id. It was also noted that Slack could "not afford to take" amitriptyline "at night . . . [because he] needs to watch his son sleep." Id. Slack had four "weeks progressive lumbago, sciatica, weakness in lower extremity, including shooting pain to foot, failed Rehab, corticosteroids, and rest. Xrays show degeneration. MRI [m]edically necessary." Id.

One year later, Slack was still regularly being treated by Dr. Messe for chronic care management. Tr. 905. The record dated January 6, 2021, shows in the HPI section that Slack had severe sciatic nerve pain and lumbar arthropathy, needed an MRI of his spine, and his "symptoms are getting worse with left leg weakness." Tr. 905, 908. In Dr. Messe's opinion, Slack was "unable to maintain gainful employment," was "unable to stand 15 minutes without resting, "unable to sit in one place over 15 minutes, must get up." Id. Injections were unsuccessful. Id. Slack reported "diminished activity and fatigue, joint swelling, myalgia, [and] limited motion." Id. It was noted Slack had four weeks of progressive lumbago, sciatica, weakness in lower extremity, left intractable shooting pain to the foot . . . xrays show degeneration. MRI [m]edically necessary." Tr. 909.

On April 6, 2021, Slack saw Dr. Messe for a follow up visit to address a small callous on his finger. Tr. 901. In the HPI section, it was again noted

that Slack had "chronic pain," which required him "to walk with a cane, [they were] still considering what he should do for long term"; his "left leg is weaker and dragging behind him." Tr. 904. Slack reported "diminished activity and fatigue." Id. Upon examination, although Slack moves his extremities "without difficulty," there was decreased range of motion and antalgic gait. Id. Notably, Dr. Messe found "LEFT LEG WEAK, EXTENSION STRENGTH 3/5 WHEN COMPARED TO RIGHT, POSITIVE SLR ON LEFT." Id. Slack had twelve weeks of "progressive lumbago, sciatica, weakness in lower extremity, left intractable shooting pain to foot . . . xrays show degeneration. MRI [m]edically necessary." Id.

On May 4, 2021, Slack went to Dr. Messe for a small skin cyst and "diminished activity and fatigue." Tr. 897, 900. Slack could move his extremities "without difficulty." Tr. 900. Dr. Messe referred Slack to a dermatologist. Id. Two days later, on May 6, 2021, Slack had an MRI of his lumbar spine. Tr. 920-22. The MRI showed:

> 1. At both L4-L5 and L5-SI more chronic appearing mild plus spondylosis with limited mild disc protrusion at both levels with limited extrusion as well at L5-S1, more effacement towards the right L5 extrathecal root at L4-5; slightly towards the extrathecal S1 roots at L5-S1; at both levels there is some effacement bilaterally towards the respective exiting L4 and L5 roots, as discussed.

2. Underlying gradual mild multimodal scoliosis pattern

3. The S1 vertebra is transitional; a rudimentary disc with lumbarized character...

Tr. 921.

The last time Slack saw Dr. Messe before the ALJ rendered a decision was on July 6, 2021, but this was to address a skin lesion. Tr. 893-97. Slack reported "normal activity level and no fatigue." Tr. 896. He could move his extremities "without difficulty." Id. On Slack's right forearm was an "inflamed, tender, red" furuncle. Tr. 896. Dr. Messe made a small incision and drained it. Id. The record also shows that Slack was assessed with lumbago with sciatica on the left side and was prescribed ibuprofen. Id.

C. The Appeals Council's refusal to review Dr. Messe's report dated August 11, 2021, is reversible error.

The Appeals Council committed reversible error by refusing to review evidence, namely, Dr. Messe's medical report dated August 11, 2021, (Tr. 45-49[5]), two weeks after the ALJ's decision. The Commissioner argues the evidence does not relate to the period at issue and was not chronologically relevant because it was dated after the ALJ's decision; it restates other evidence in the record and presents a deterioration of Slack's condition, which occurred after the ALJ's decision. See ECF No. 17.

---

[5] Tr. 48 and 49 are duplicative of Tr. 47.

"Generally, a claimant may present evidence at each stage of the [agency's] administrative process." Hargress v. SSA, Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018). "If a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant." Id. at 1309. "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." Id. "New evidence is chronologically relevant if it 'relates to the period on or before the ALJ's hearing decision.'" Id. (internal citations omitted). "Whether evidence meets the new, material, and chronologically relevant standard is a question of law subject to de novo review." Washington v. SSA, 806 F.3d 1317, 1321 (11th Cir. 2015) (citation omitted). The Appeals Council commits reversible error when it improperly refuses to consider evidence. Id. Even "medical opinions based on treatment occurring *after* the date of the ALJ's decision may be chronologically relevant." Id. at 1322 (emphasis added).

The record at issue shows that Slack saw Dr. Messe for his three-month follow-up two weeks after the ALJ's decision. Tr. 45. The singular fact that this medical evaluation occurred *after* the ALJ's decision does not negate its chronological relevance. This medical evaluation clearly relates to the period before the ALJ's hearing decision. In the HPI, Dr. Messe confirmed the herniated disk in Slack's lower back. Tr. 47. Dr. Messe

indicated that Slack was present due to his "chronic conditions" and "was recently denied social security disability, but he wants to appeal due to worsening clinical situation . . . [h]is chronic pain conditions, spinal pains, weakness and chronic fatigue are all worsened even since our last visit in May." Id. The HPI restates some of Slack's subjective complaints:

> *Patient reports* worsening neck, c-spine pain and shooting pains to shoulders and shoulder blades that limits use of his upper extremities . . . *Patient reports* . . . average daily pain level 8/10 in neck and lumbar regions, as well as shooting in sciatica nerve pains, left leg worse than right. He walks with a cane daily and relies heavily upon with unsteady gait. He cannot lift greater than 10 pounds. He cannot stoop, bend at waist, kneel, or squat due to pain. He cannot stand greater than 10 minutes without resting, sitting down due to pain. He cannot sit in one place without adjusted for greater than minutes due to pain. Patient has severe exacerbations of spinal pain (10/10) that require him to lay down all day, at least one a week. (Emphasis added).

Tr. 47. In the HPI section, Dr. Messe evaluated Slack's May 2021 MRI for the first time: "Lumbar spine MRI shows **advanced arthritis** of facets, **degenerative discs** and **moderate pinching** of multiple lumbar spinal nerves" (emphasis added). Tr. 47. Dr. Messe's interpretation of the May 2021 MRI is materially relevant. On three occasions before the ALJ's decision -- August 25, 2020; January 6, 2021; and April 6, 2021 -- Dr. Messe indicated that an MRI was "[m]edically necessary" given Slack's worsening symptoms and "degeneration." Tr. 904, 909, 914. Finally, on May 6, 2021, Slack had

the MRI; and on August 11, 2021, Dr. Messe evaluated the results. Tr. 47.

In the ROS section, Dr. Messe also noted: "Patient reports **diminished activity** . . . and no fatigue . . . reports **soft tissue swelling, joint swelling, myalgia, limited motion, previous injuries, and trauma** . . . reports **numbness, weakness, tingling, burning, and shooting pain**." Tr. 48.[6]

Dr. Messe's noted his findings upon physical examination:

> Neck: tender posterior cspine, with trigger point tenderness along paraspinal muscles C5, C6, C7, T1, T2, T3. Also tender on both scapula, makers him [flinch] on pinpoint tenderness.

> Lumbar spine is straight . . . Palpation: severe tenderness on lumbar midline and paraspinal muscle, L1, L2, L3, L4, L5. Triggering points cause him to flinch. Lumbar spinal forward flexion limited to 30 degrees. Lumbar extension 0 degrees. Side bending 0 degrees bilaterally.

> Motor: hand grip is 2/5 strength bilaterally. Upper Arm strength flexion 3/5 on left, and 2/5 on right. Left leg extension weakness 3/5. Left toe lift: 2/5 strength. Right [l]eg extension 4/5 strength. Right foot toe lift: 3/5.

> Sensory: Used pin prick, [p]alms of both hands and 10 fingers all severely diminished to light tough and pin. Bottoms of both feet and ankles, also severely diminished to light touch and pinprick.

---

[6] Words in bold are as they appear in the medical report. Apparently, there is an error in the pagination of the transcript. Three pages contain the marker "48" in the lower, right-hand corner. Additionally, Tr. 48 is duplicated. Accordingly, the citation in this Report to "Tr. 48" references ECF No. 7-2, p. 49 of 74.

> Gait: sluggish, unsteady, antalgic with cane in right hand. Very difficult unsteady to climb on and off exam table and to rise from seat due to pain.

Tr. 48. There was no recommended treatment.

It cannot be maintained that the record merely restates evidence previously before the ALJ or that the record shows an exacerbation of Slack's condition that occurred *only after* the ALJ's decision. No physician evaluated the May 2021 MRI results until Dr. Messe did so on August 11, 2021.

The Commissioner's statement or suggestion that Slack's use of a cane was not previously reported or only became necessary after the ALJ's decision is erroneous. Slack's use of a cane to ambulate was first reported in February 2020 and was again noted in April 2021. Tr. 838, 901. The ALJ noted the same in his decision. Tr. 17. Moreover, there was no discussion during the hearing about Slack's use of the cane. Tr. 933-67. Dr. Messe's report dated August 11, 2021, is "new, material, and chronologically relevant." Whether the Commissioner's review of this medical record, ultimately, changes the decision is unknown. That is not within the purview of this Court. However, a *reasonable possibility* exists that the evidence would change the administrative result. Accordingly, the Appeals Council's refusal to review Dr. Messe's medical evaluation is reversible error.

D. The ALJ read the MRI reports himself and ignored the direct statements of medical experts regarding those reports without offering any analysis of the contrary statements from those medical experts when forming conclusions.

As explained by the Eleventh Circuit Court of Appeals in Wind v. Barnhart: "The ALJ commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause. Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986), or if he fails to articulate clearly his reason for according this evidence less weight, MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)." 133 F. App'x 684, 691 (11th Cir. 2005).

Over the years, Slack had three MRIs of his lumbar spine – the first one, in 2013; the second one, in 2016; the third MRI taken five years later, in May 2021; the cervical spine MRI was taken in 2018. Tr. 622, 398, 853, 920-22. The ALJ addressed the May 2021 MRI as follows: "The claimant had the recommended lumbar MRI in May 2021. The MRI showed mild abnormalities with no evidence of nerve root impingement. The claimant has not complained to Dr. Messe of chronic neck, knee or shoulder pain." Tr. 18. The ALJ does not rely on any physician's evaluation of the May 2021 MRI -- because there was none until Dr. Messe's in August 2021. Instead, the ALJ relied on his own lay interpretation of the MRI. This is particularly notable with the ALJ's determination that Dr. Messe's opinion was "not

consistent with the claimant's examination findings, imaging or treatment history." Tr. 18. Dynamic noted as early as January 8, 2019, that Slack's condition was worsening and that an MRI was necessary. Tr. 868-69. Dr. Messe noted twice that Slack's condition was worsening on August 25, 2020, and January 6, 2021, and an MRI was "[m]edically necessary." Tr. 905-08, 913.

The ALJ noted Slack had "not sought treatment from orthopedics or neurosurgery for treatment of his allegedly disabling back pain or even pain management in more than two years." Tr. 18. However, this ignores the record that Slack continued to pursue other care and evaluations from his physicians on a continuous basis. Both Dynamic and Dr. Messe noted that opioids could be considered to help Slack with his pain, but there was concern with his history of drug abuse and continued use of marijuana. For that reason, opioids were not prescribed. Slack continued with ibuprofen 600mg and 800mg strength, and other modalities to ease his pain and inflammation including ice, heat, electrical stimulation, and, of course, rest. Tr. 821-39, 868-69, 877, 894-96, 898, 902-03.

The record indicates that injections did not alleviate Slack's pain in the past; therefore, there was no motivation for him to continue that course of treatment. Tr. 654-58, 666, 905, 908. Dr. Messe noted that "rehab" "failed."

Tr. 904. Dynamic noted that Slack was not amenable to surgery because of his responsibilities as the sole caretaker of his autistic son. Tr. 480.

It was improper for the ALJ to conclude that Slack did not seek pain management treatment in "more than two years." Tr. 18. The ALJ reached this conclusion by ignoring the contrary opinions of the treating physicians – Dr. Purushottam, Dynamic, and Dr. Messe – which is reversible error.

E. The ALJ erred by failing to articulate any specific reasons for rejecting Dr. Messe's opinion of Slack's limitations.

For applications filed prior to March 27, 2017, as is the case here, the ALJ is required to evaluate every medical opinion received. See 20 C.F.R 419.927(c). "When determining the weight to give a doctor's opinion, an ALJ considers numerous factors including whether the doctor examined the claimant, whether the doctor treated the claimant, whether the doctor supported his or her opinion with evidence, whether the doctor's opinion is consistent with the record as a whole, and the doctor's specialty." Planas v. Comm'r of SSA, 842 F. App'x 495, 497 (11th Cir. 2021) citing 20 C.F.R. 419.927(c). "A treating doctor's opinion is entitled to more weight; and an ALJ must give good reasons for not giving treating doctors' opinions substantial weight." Id. citing Hargress v. SSA, 883 F. 3d 1302, 1305 (11th Cir. 2018). Courts "will not 'second guess' the ALJ's determination of the weight the treating physician's opinion deserves so long as he articulates a

specific justification for it." Hunter v. SSA, Comm'r, 808 F.3d 818, 823 (11th Cir. 2015).

As stated in Section V(D) above, in forming his conclusions, the ALJ ignored contrary medical opinions. To that end, the ALJ gave "little weight" to Dr. Messe's opinions. Although the issues of whether Slack can maintain gainful employment are reserved to the Commissioner, to find that Dr. Messe's opinions are inconsistent with the record as a whole is insupportable. The ALJ gave "some weight" to the agency examiners -- Dr. Krishnamurthy, Dr. Peterson, and Dr. Ames-Dennard. Tr. 18-19. However, these opinions were formulated without the benefit of reviewing any medical treatment records for a three-year period, from May 2018 through July 2021. Dr. Peterson, a Ph.D., J.D., who is not a medical doctor, rendered an opinion on March 21, 2018. Tr. 74-83. Dr. Ames-Denard, also a Ph.D., rendered an opinion on May 29, 2018. Tr. 85-92. Dr. Krishnamurthy, the only M.D., rendered an opinion on May 30, 2018. Tr. 96-98.

In this case, the treating physicians' opinions are entitled to more weight; and the ALJ did not give good reasons for not giving their opinions substantial weight. Hargress, 883 F. 3d at 1305. The ALJ did not base his decision on the proper legal principles; therefore, remand is warranted.

## VI.   Conclusion and Recommendation

It is respectfully **RECOMMENDED** that the Court **REVERSE AND REMAND** the Commissioner's decision because it is not supported by substantial evidence and is not premised on the proper legal principles. 42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d 1439. Finally, the case should be **CLOSED**.

IN CHAMBERS at Tallahassee, Florida, on February 21, 2023.

<u>/s/ Martin A. Fitzpatrick</u>
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).